**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| Corinthian, LLC, | : | |
| Debtor. | : | Case No. 08-12619(JKF) |

_____

# MEMORANDUM OPINION

**BY:    JEAN K. FITZSIMON
United States Bankruptcy Judge**

Before the Court is the motion ("Motion") of the Acting United States Trustee ("UST") to dismiss this Chapter 11 bankruptcy case pursuant to 11 U.S.C. § 1112(b). The UST asserts that this bankruptcy case should be dismissed for the following reasons:

(1) When the bankruptcy case was filed, Corinthian ("Debtor") was not registered in Pennsylvania;

(2) The corporate resolution which appears on the docket authorizing the bankruptcy filing for Debtor was signed and dated June 15, 2008 which is approximately 2 months after the bankruptcy case was filed;

(3) Debtor has no business operations and its only activity is litigation which has been ongoing in Florida; and

(4) Nothing of benefit has occurred, and there has been no movement forward, in this bankruptcy case so creditors should not be forced to wait for the litigation in Florida to conclude while being prohibited from pursuing their claims against the Debtor.

After Debtor filed its answer to the Motion, the Court held an evidentiary hearing at which testimony and documentary evidence was presented.

Based upon the record and the credibility of the witnesses, the Court concludes that Debtor has no employees, no current business operations and is centered solely around litigation occurring in the state court in Florida. Pursuant to the standard set forth in 11 U.S.C. §1112(b)(1), the Motion shall be granted and the case shall be dismissed.

# I.  BACKGROUND[1]

*Debtor's Incorporation in Florida and
Subsequent Registration in Pennsylvania*

Debtor, which was originally incorporated in Florida in the fall of 2004, is equally owned by Quaker Development Corp. and Avenue Q LLC. Quaker Development is wholly owned by Edward Weingartner; Avenue Q is wholly owned by Dreama Odell. According to Odell, she sought to register Debtor as a business entity in Pennsylvania on April 17, 2008, by faxing the required form to the Pennsylvania Department of State Corporation Bureau on that date. She further testified that she received the form back from the Corporation Bureau on

---

[1] The facts set forth above are based on the testimony admitted at the hearing on the Motion as well as the documentary evidence in the record. Pursuant to the parties' agreement, documentary evidence in the record includes all exhibits admitted into evidence in connection with the Motion as well as all documents filed in Debtor's bankruptcy case.

April 19, 2008, advising her that she needed to add something to the Debtor's name so she added ", PA" and faxed the form back.[2] At the hearing on the Motion, Debtor produced a document bearing the name "Corinthian LLC, PA" and stamped "PA Dept. of Stat Apr 23 2008." According to Odell, this document is evidence that Debtor was registered in Pennsylvania by the aforementioned date. However, print-outs from Department of State website list Corinthian LLC, PA as having been created in Pennsylvania on 7/29/08 which, interestingly, is four days after the U.S. Trustee filed her Motion. See Exhibit D-2 & D-3.

***The Florida Land Purchase Deal & Subsequent Litigation***

When Debtor was created in 2004, it was assigned the interest of the buyer under a contract for the purchase of certain land in Florida. When the seller

---

[2] At the close of the hearing on the Motion, the Court advised the parties that the record would be left open for them to submit additional documentary evidence if they so desired. Debtor submitted one additional document for inclusion in the record. The document appears to be identical to the document which Debtor submitted at the hearing as Exhibit D-1 except that it has a third page attached thereto. The third page, which is signed by Odell and dated April 21, 2008, states the following:

> This Corinthian LLC is the same one as was filed electronically last week.
> The Certificate of Organization was submitted in error.
> To the extent that this still requires a consent to us similar name, please accept it as such.

The UST objects to the admission of this document on the following grounds: relevancy, hearsay, authentication and the best evidence rule. Presumably, the document is offered to support Odell's contention that the Debtor was registered in Pennsylvania before it filed its bankruptcy case. However, the document does not achieve that purpose. Even if the document is interpreted as a communication which Odell faxed to the Pennsylvania Department of State Corporation Bureau on April 21, 2008, it does not establish that the Debtor was registered in Pennsylvania on that date. Accordingly, the document has no bearing on the outcome of this matter.

3

failed to follow through with the sale of the land, Debtor commenced an action against it in the state court in Florida (the "Florida action"). The defendants in the Florida action filed a counterclaim against Debtor.

***Debtor's Bankruptcy Filing and
Attempt to Enjoin Trial in Florida Action***

On April 21, 2008, which was only four days after Odell sought to register Debtor in Pennsylvania, Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code. Thereafter, Debtor moved in this Court to enjoin the trial which was scheduled for May 27, 2008 in the Florida action. By Order, dated May 27, 2008, this Court denied the motion, stating that the Florida action was not enjoined "so long as that civil action does **not** prosecute nor adjudicate any claims against the chapter 11 debtor." See Amended Order dated May 23, 2008 at Docket Entry No. 30 (emphasis in original).

On May 27, 2008, the state court proceeded with a jury trial of Debtor's claims against the defendants in the Florida action. See Motion for Reconsideration or Relief from the May 23 and 27 Orders of this Court Denying the Debtor's Application for Enforcement of the Automatic Stay at pg. 4. When Debtor failed to appear at the trial, defendants moved for a directed verdict on Debtors' claims and the state court rendered judgment in the defendants' favor on the claims.[3] Id. Debtor filed an appeal from the state court's rulings.

---

[3] Based on the record, it appears that, prior to the trial, the state court granted summary judgment in favor of the defendants on some of the counts in Debtor's

(continued...)

***Debtor's Schedules, Debtor's Corporate
Resolution and the U.S. Trustee's Motion***

On June 16, 2008, Debtor filed its Schedules, Statement of Financial Affairs and its corporate resolution authorizing its bankruptcy filing. According to Debtor's Schedules A through E, Debtor owns no real or personal property and has no creditors holding secured or unsecured priority claims.  On Schedule F, Debtor listed nine unsecured claims.  Three of the claims are held by insiders.  Of the remaining six claims, four are listed as disputed.  One of the claims, for which three creditors are named, is for purchase price of the land in Florida.  See Schedules F & G.  According to the Debtor's Statement of Financial Affairs, Debtor has no income from employment, operation of business or other than from employment or operation of business.  There is no mention whatsoever on the Schedules or the Debtor's Statement of Financial Affairs of any ongoing business of the Debtor other than Florida action.

The corporate resolution which was filed on Debtor's behalf in its bankruptcy case is dated June 15, 2008.  See Docket Entry No. 58.  This document states that it was resolved at a meeting of Debtor's members that Debtor should "file as soon as practicable" for reorganization under Chapter 11 of the Bankruptcy Code.  However, at the hearing on the Motion, Debtor submitted a

---

[3](...continued)
complaint against them.  The trial was, therefore, limited to the remaining counts against the defendants.  After the defendants moved for directed verdicts against Debtor, the state court entered judgment in the defendants' favor on the remaining counts. See Exhibit I (copy of state court trial transcript, dated May 27, 2008) of Motion for Reconsideration or Relief from the May 23 and 27 Orders of this Court Denying the Debtor's Application for Enforcement of the Automatic Stay.

similar document titled "Resolution of Membership of Corinthian LLC" which states that "[i]t is resolved that the members of Corinthian LLC hereby resolve to file a reorganization plan on April 19, 2008 and that the LLC has 5 days to retain counsel per the Bankruptcy Court because it is a LLC."  See Exhibit D-1.  This document was never filed with the Court.  Both documents are signed by Odell and Weingartner.

On July 25, 2008, the UST filed her Motion.  Three days later, Debtor filed an Amended Schedule B and an Amended Schedule F.

Whereas Debtor listed no personal property on its original Schedule B, it listed a total of $61,074,000.00 in personal property on its Amended Schedule B.  This amount includes two security deposits.  One deposit is for $178,000 with Sewell Hardware; the other one is for $222,000 with National City Bank.  These security deposits relate to the land purchase deal which is the subject of the Florida action.  The other personal property which Debtor listed on its amended schedule are the following three contingent and unliquidated claims:
(i) $2,530,000.00 identified as the "Value of Purchase from National City Bank of site after construction"; (ii) $144,000 identified as "Real Estate Development of Evernia Street property Lease Back Sewell Hardware during construction" and (iii) $58,000,000.00 as "Claim for breach action against National City Bank, Sewell Hardware and Sewell Partnership."[4]

---

[4] On its Amended Schedule B, Debtor also listed "Approvals from City of West Palm Beach," but it listed the value for this personal property as "unknown."

Debtor's Amended Schedule F lists the same dollar amount for unsecured nonpriority claims as its original Schedule F. The creditors are simply listed in a different order/manner.

***The Debtor's Operating Reports***

On August 27, 2008, four monthly operating reports were filed on the Debtor's behalf. The Initial Monthly Operating Report is dated April 27, 2008 and signed by O'Dell. It has only two attachments. One of the attachments is a Cash Flow Projections for the 12 month Period from April 23, 2008 through April 23, 2009. According to this document, the Debtor's cash flows for the aforementioned 12 month period are projected to be: $600.00; $0.00; $0.00; $3,000.00; $2,000.00; $10,000.00; $2,000.00; $2,000.00; $10,000.00; $2,000.00; $3,000.00; and $5,000.00. The only other attachment is a page listing a checking account at Wachovia for Corinthian, LLC with Sandra Forbes who is a financial analyst with the U.S. Trustee's Office identified as the Trustee.

The other monthly operating reports, also signed by O'Dell, are dated May 24, 2008, June 22, 2008 and July 22, 2008. All of them state that Debtor has no employees. They all contain the same Balance Sheet, dated May 13, 2008, showing that Debtor has $5,000 in cash. At the hearing on the Motion, O'Dell testified that while they originally intended to deposit this amount of money into a bank account for the Debtor, it was never done. A statement attached to the Debtor's Operating Report for June 22, 2008, lists a business checking account for Corinthian, LLC, at Wachovia Bank with an opening balance of

$665.95 on 5/31 and a closing balance of $654.40 on 6/30.  A similar statement attached to the Operating Report for July 22, 2008 shows the same amount ($654.40) for the opening and closing balances in Corinthian's Wachovia account for the month of July.  The Statement of Operations attached to the Operating Reports for May, June and July are completely blank except that the Statement of Operations for July has the abbreviation "N/A" written at the top.

### *Odell's Testimony at the Hearing Regarding Debtor's Other Projects*

At the hearing on the Motion, Odell testified that the Debtor has an agreement with National City Bank (and the necessary approvals) to build a $2.5 million building for it.  However, no supporting documentation whatsoever was provided to substantiate this testimony and it was the *first time* that any such agreement was mentioned.[5]

At the hearing, Odell also testified that Debtor has a consulting source agreement with Quaker Farms which is another entity owned by Weingartner.  According to Odell, Debtor earned $3,000.00 under this agreement in August.  She further explained that the cash sales listed on the Cash Flow Projections sheet attached to the Initial Monthly Operating Report, dated April 27, 2008, are based on Debtor's projected earnings pursuant to this agreement with Quaker Farms.  However, Debtor failed to provide any supporting documentation, other

---

[5] Sandra Forbes, the Financial Analyst who was assigned to this bankruptcy case by the U.S. Trustee's office, held her initial interview for this Chapter 11 bankruptcy case on May 13, 2008.  Odell and Weingartner were both present at this meeting as well as the Debtor's counsel and the U.S. Trustee.  Neither Odell nor Weingartner nor Debtor's counsel mentioned the Debtor's alleged agreement with National City Bank.

8

than the Cash Flow Projections sheet, to substantiate the existence of this agreement and it was never mentioned prior to the hearing.[6]

## II. DISCUSSION

The U.S. Trustee seeks dismissal of this case pursuant to 11 U.S.C. § 1112(b). This subsection provides, in pertinent part:

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested . . . dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1). While §1112(b)(4) enumerates examples of "cause" to convert or dismiss a Chapter 11 case, the list is illustrative and not exhaustive. In re Johnson, 2008 WI 696917, at *6 (Bankr. E.D. Pa. March 11, 2008); In re 3 Ram, Inc., 343 B.R. 113, 117 (Bankr. E.D. Pa. 2006). "Whether cause exists under §1112(b) and, if so, whether dismissal is appropriate are questions left to the sound discretion of the bankruptcy court." In re Brown, 2005 WL 2589194, at *2 (Bankr. E.D. Pa. March 31, 2005). "In so concluding, a court need not provide an exhaustive elaboration on its reasoning." In re Johnson, 2008 WI 696917, at *7.

---

[6] There was no mention at the initial Debtor interview which Forbes conducted on May 13, 2008, of any consulting source agreement between the Debtor and Quaker Farms.

9

The Debtor in the instant case failed to establish that it has any current business operations.  According to Debtor's Schedules and Statement of Financial Affairs, Debtor has no income, no business and no employees.  While Odell testified at the hearing that Debtor has an agreement with National City Bank to build a $2.5 million building, no documentary evidence was submitted to substantiate the testimony and no specifics regarding the project were provided.  Insofar as Odell's testimony regarding Debtor's alleged agreement with Quaker Development, no agreement was ever offered to substantiate the evidence.  Moreover, no mention was made of these purported agreements when the Debtor filed for bankruptcy or when Odell and Weingartner met with the U.S. Trustee's office.  The *only* evidence that these business arrangements exist is Odell's testimony and the Court is far from convinced of her credibility.  Odell testified that she registered Debtor as a business in Pennsylvania before Debtor filed for bankruptcy but even the documentation offered to support her testimony is inconsistent with it.  The documents quite clearly show that Odell did not register Debtor as a business in Pennsylvania before Debtor's bankruptcy case was commenced.  The Court also questions Odell's credibility as a witness because no reasonable explanation was provided for the existence of two corporation resolutions authorizing the filing of Debtor's bankruptcy case.  A corporation resolution, dated June 15, 2008, was filed in the case; yet, at the hearing Debtor produced another corporate resolution, the language of which suggests that it was prepared before April 19, 2008.  If a corporate resolution existed before April 19, 3008, authorizing Debtor to file a bankruptcy case, why would another one be created and filed?

With no credible evidence in the record that Debtor has any current business operations, the Court concludes that this bankruptcy case is centered around and wholly dependent upon a successful outcome in the Florida Action. Courts have dismissed cases in similar circumstances.  See In re Edwards, 1996 WL 407253, at *4-*5 (Bankr. E.D. Pa.  June 17, 1996); In re Roma Group, Inc., 165 B.R. 779, 780 (Bankr. S.D.N.Y. 1994).  In this particular bankruptcy case, the circumstances warranting dismissal are particularly compelling since, with Debtor's failure to appear at the trial in the Florida action, it is highly doubtful that Debtor has any chance of succeeding on its appeal in the state matter. Therefore, the Court opines that there are no "unusual circumstances . . . that establish" that the U.S. Trustee's request for dismissal of this bankruptcy case "is not in the best interests of the creditors and the estate."  The bankruptcy case shall be dismissed.

### III.  SUMMARY

Based the conclusions stated above and in accordance with the standard for dismissal set forth in 11 U.S.C. §1112(b)(1), an Order shall be entered dismissing this Chapter 11 bankruptcy case.

DATED: February 11, 2009.

_____
HONORABLE JEAN K. FITZSIMON
United States Bankruptcy Judge